IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.                              Crim. Action No. 2:19-CR-22
                                           (Kleeh)

**TIMOTHY JUSTON WIMER,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 73], OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 80], AND DENYING MOTIONS TO SUPPRESS [ECF NOS. 54, 63]**

Pending before the Court is a Report and Recommendation ("R&R") by United States Magistrate Judge Michael J. Aloi (the "Magistrate Judge"). In the R&R, the Magistrate Judge recommends that the Court deny two motions to suppress filed by Defendant Timothy Juston Wimer ("Wimer"). For the reasons discussed below, the Court adopts the R&R, overrules Wimer's objections, and denies both motions to suppress.

      **I.    STANDARD OF REVIEW**

When reviewing a magistrate judge's R&R, the Court must review de novo only the portions to which an objection has been timely made. 28 U.S.C. § 636(b)(1)(C). Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the [parties do] not object." Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 603-04 (N.D.W. Va. 2007) (citing Camby v.

**USA V. WIMER** 2:19-CR-22

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 73], OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 80], AND DENYING MOTIONS TO SUPPRESS [ECF NOS. 54, 63]**

Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold portions of a recommendation to which no objection has been made unless they are clearly erroneous. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). Here, the R&R provided that parties must file objections on or before Tuesday, November 5, 2019. Wimer timely did so [ECF No. 80]. He objected to four portions of the R&R, specifically arguing the following:

    (1)   There was no reasonable suspicion for the search of the black bag;

    (2)   There was no reasonable suspicion for the stop of the Volvo;

    (3)   There was no probable cause to search the Volvo; and

    (4)   The Government is not relying on the warrant for the search of the vehicle, so this issue should not be under the Court's consideration.

The parties did not file any objections to the Magistrate Judge's summary of testimony or findings of fact. After reviewing for clear error and finding none, for the sake of brevity, the Court adopts and incorporates by reference both the Magistrate Judge's summary of the testimony and the factual findings as they were applied.

**USA V. WIMER**                                                     2:19-CR-22

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 73], OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 80], AND DENYING MOTIONS TO SUPPRESS [ECF NOS. 54, 63]**

## II. DISCUSSION

The Court reviews de novo the specific portions of the R&R to which Wimer objected.

### A. The probation officers had reasonable suspicion to search the black bag in Wimer's bedroom.

The Fourth Amendment to the Constitution of the United States provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." When an individual is on probation or supervised release, however, he may be subject to conditions that diminish his reasonable expectation of privacy. United States v. Hill, 776 F.3d 243, 248-49 (4th Cir. 2016) (citing United States v. Knights, 534 U.S. 112, 119-20 (2001)).

In Knights, the Supreme Court of the United States held that if a probationer agrees to a warrantless search condition, a probation officer with reasonable suspicion of criminal activity can search the probationer's residence without a warrant. Knights, 534 U.S. at 121. In elaborating on this principle, the Fourth Circuit has found that "the specific probation condition authorizing warrantless searches was critical" to the holding in

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 73], OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 80], AND DENYING MOTIONS TO SUPPRESS [ECF NOS. 54, 63]**

Knights. Hill, 776 F.3d at 249. The Hill court also noted that the "probation order clearly expressed the search condition and Knights was unambiguously informed of it." Id. (citing Knights, 534 U.S. at 119).

Under these governing principles, the Magistrate Judge was correct to find that the probation officer had the requisite reasonable suspicion to search the black bag in Wimer's house. Wimer was on supervised release when the search occurred. As part of his supervised release, he was subject to certain conditions. Paragraph 17 of these conditions provided:

> Upon reasonable suspicion by the probation officer, you shall submit your person, property, house, residence, vehicle, papers, computers, or other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer. Failure to submit to a search may be grounds for revocation of release. You shall warn other occupants that the premises may be subject to searches pursuant to this condition.

ECF No. 71-2 at ¶ 17.

The Court disagrees with Wimer's contention that "there were no particularized and articulable facts given by the Officers to support a reasonable belief that there would be contraband or evidence of a violation in Mr. Wimer's bedroom . . . or in the black bag . . . ." ECF No. 80 at 2. As soon as the probation

USA V. WIMER                                                    2:19-CR-22

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 73], OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 80], AND DENYING MOTIONS TO SUPPRESS [ECF NOS. 54, 63]**

officers approached the home, Officer Bennett saw a woman who was standing in the doorway and "abruptly" turned and went inside. This made him suspicious that she wanted to either hide evidence of a supervised released violation or warn the home's occupants that probation officers had arrived. Both officers heard commotion within the house before they entered, and once they entered, they detected tension and nervousness among the occupants of the home. Based on these cues, Officer Bennett decided to separate Wimer from the others.

Officer Bennett told Wimer that he (Bennett) was uneasy about what he had observed, and he questioned Wimer. Wimer was fidgeting and taking his hands in and out of his pockets. He appeared nervous. Officer Bennett noticed a bulge in Wimer's pockets, so he asked Wimer what was in them. Wimer emptied his pockets and pulled out a "wad of cash and some blue gloves." Bennett noticed what appeared to be a pack of cigarettes in Wimer's back pocket and asked Wimer if there was anything else in his pockets. Bennett removed the item, and it was a set of digital scales. Based on the cash and the digital scales, Bennett believed there was drug activity afoot. After further questioning, Wimer told Bennett that he and Ashley Beercamp were about to leave to go purchase heroin.

**USA V. WIMER**                                                          **2:19-CR-22**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 73], OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 80], AND DENYING MOTIONS TO SUPPRESS [ECF NOS. 54, 63]**

Bennett then advised Officer Meadows of Wimer's comments and what he had found.

Under these facts, the probation officers had the requisite reasonable suspicion to search the entire home for drugs.[1] Based on Wimer's status on supervised release and Paragraph 17 of his conditions, the standard is met. As such, the probation officers were free to search the individual black bag in the bedroom, along with any place in the home in which drugs could be found. Evidence obtained from the search of the home will not be suppressed.

**B.   Law enforcement had reasonable suspicion to stop the Volvo.**

Law enforcement may stop a vehicle upon reasonable and articulable suspicion of unlawful conduct. United States v. Arvizu, 534 U.S. 266, 273–75 (2002). Whether reasonable suspicion exists depends upon the totality of the circumstances. Id. at 272. Reasonable suspicion requires more than a "mere hunch," but it does not rise to the level of probable cause. Id. at 273.

Here, law enforcement had the requisite reasonable suspicion to stop the Volvo. Sergeant Kessel ("Kessel") was familiar with Wimer because Kessel was present at the search of Wimer's home on January 15, 2019. Kessel also knew that the Court issued an arrest

---

[1] Again, the Court is quite cognizant that the less onerous "reasonable suspicion" standard applies here as opposed to "probable cause."

USA V. WIMER                                                    2:19-CR-22

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 73], OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 80], AND DENYING MOTIONS TO SUPPRESS [ECF NOS. 54, 63]**

warrant for Wimer within a week of that search. While driving south on U.S. Route 220, Kessel recognized the silver Volvo four-door vehicle (the "Volvo") because it was present at Wimer's home on the day of the search. He testified that the Volvo was "unique" in the rural area of Hardy County. Kessel believed the driver of the Volvo "appeared to be Wimer."

Kessel then turned to follow the Volvo and called dispatch. After Kessel told dispatch the "tag number" of the vehicle, dispatch informed Kessel that the vehicle was registered to a "Wayne or Katie Wetzel." Kessel knew that Kaitlyn Wetzel and Wimer have a child together. At that point, Kessel asked Romney Communications if someone could assist based on a "possible fugitive being in the vehicle." Corporal Massie ("Massie") attempted to make a traffic stop of the Volvo, and the Volvo then attempted to elude Massie. The Volvo eventually stopped at Spaid's Garage in Hampshire County, attempting to hide from plain view, until police approached after being pointed in the right direction by a bystander.

Even though the Volvo was not stopped by Kessel himself, Kessel had reasonable suspicion to suspect that Wimer was a fugitive from justice and inside the Volvo. As such, after Kessel

USA V. WIMER                                                2:19-CR-22

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 73], OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 80], AND DENYING MOTIONS TO SUPPRESS [ECF NOS. 54, 63]**

shared his suspicion with fellow officers, the stop conducted was constitutionally sound.

**C.    Law enforcement had probable cause to search the Volvo.**

Absent certain exceptions, for a search to be valid, a "neutral and detached magistrate" must find probable cause to support a warrant. See Illinois v. Gates, 462 U.S. 213, 240 (1983). One exception to the warrant requirement is the "automobile exception." It "applies to searches of vehicles that are supported by probable cause to believe that the vehicle contains contraband." United States v. Ross, 456 U.S. 798, 798 (1982). The Fourth Amendment's "'central requirement' is one of reasonableness." Illinois v. McArthur, 531 U.S. 326, 330 (2001) (citing Texas v. Brown, 460 U.S. 730, 739 (1983)). The Supreme Court has held that an automobile search "is not unreasonable if based on objective facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." Ross, 456 U.S. at 809.

Probable cause exists when "there is a fair probability that contraband or evidence of the crime will be found in a particular place." Gates, 462 U.S. at 238. This is determined by "an analysis of the totality of the circumstances" and "viewed from the standpoint of an objectively reasonable police officer." United States v. Dickey-Bey, 393 F.3d 449, 453 (4th Cir. 2004); Ornelas

USA V. WIMER                                                       2:19-CR-22

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 73], OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 80], AND DENYING MOTIONS TO SUPPRESS [ECF NOS. 54, 63]**

v. United States, 517 U.S. 690, 696 (1996). "When conducting a warrantless search of a vehicle, law enforcement officers with probable cause are permitted to search 'every part of the vehicle and its contents that may conceal the object of the search.'" United States v. Graham, 686 F. App'x 166, 173 (4th Cir. 2017) (citing Ross, 456 U.S. at 825).

Here, officers had the requisite probable cause to search the entire Volvo without a warrant. After officers stopped the Volvo, they detained its occupants. Deputy Smith ("Smith") then conducted a protective pat-down of Wimer for safety.[2] While this was happening, Wimer admitted that he had a lighter and a "tooter"[3] in his pocket. Deputy Smith then noticed, in plain view, a brown Crown Royal bag underneath the driver's side door of the vehicle. Smith asked Wimer "what's this under the car you tried to ditch," and Wimer responded that it was "just empty containers — actually one

---

[2] "[A]fter lawfully stopping a vehicle, police officers may frisk any occupant of the car if there is 'reasonable suspicion that the person subjected to the frisk is armed and dangerous.'" United States v. Brooks, 685 F. App'x 229, 232 (4th Cir. 2017) (quoting Arizona v. Johnson, 555 U.S. 323, 326 (2009)). Based on the officers' knowledge that Wimer was subject to an outstanding federal arrest, along with Wimer's attempt to elude police, the officers had the requisite reasonable suspicion necessary to conduct the pat-down.

[3] Deputy Smith recognized this as slang for drug paraphernalia.

USA V. WIMER                                          2:19-CR-22

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 73], OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 80], AND DENYING MOTIONS TO SUPPRESS [ECF NOS. 54, 63]**

might have a little bit of meth in it." The officers opened the bag, and it contained what they suspected to be methamphetamine.

Wimer contends that there is no nexus between the items found on his person and the existence of contraband in the vehicle. He has failed to cite any cases in support of his argument that are factually similar to facts presented here.[4] Counsel for Wimer confirmed on the record during the pretrial conference in this matter that she was unable to find a case to support her argument. The Court finds that the Fourth Circuit has, in fact, addressed this issue.

In United States v. Baker, police officers conducted a traffic stop based on a broken taillight, expired license plate, and their learning that there was an outstanding federal arrest warrant for the driver. 719 F.3d 313, 315 (4th Cir. 2013). Police officers took the occupants out of the vehicle and found cash, heroin, crack

---

[4] As the Fourth Circuit has noted, "[c]ourts have long recognized the lessened expectation of privacy attendant to an automobile." United States v. Ramapuram, 632 F.2d 1149, 1155-56 (4th Cir. 1980) (citing United States v. Newbourn, 600 F.2d 452, 454 (4th Cir. 1979; United States v. Torch, 609 F.2d 1088, 1091 n.3 (4th Cir. 1979)). As such, Wimer's reliance on the Sixth Circuit case of United States v. Abernathy, 843 F.3d 243 (6th Cir. 2016), in which the court found that finding marijuana outside of a home in a trash pull did not establish probable cause to search a home, is unpersuasive to the Court on this issue.

USA V. WIMER                                                    2:19-CR-22

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 73], OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 80], AND DENYING MOTIONS TO SUPPRESS [ECF NOS. 54, 63]**

cocaine, a firearm, and a digital scale on the passenger's person. Id. The Fourth Circuit wrote the following:

> After Officer Nelson found a gun, drugs, $980 in cash, and a digital scale on [the passenger's] person, he had probable cause to search the passenger compartment of Baker's vehicle. Probable cause to search a vehicle exists when "reasonable officers can conclude that what they see, in light of their experience, supports an objective belief that contraband is in the vehicle." United States v. Ortiz, 669 F.3d 439, 446 (4th Cir.2012). **This standard is satisfied when a police officer lawfully searches a vehicle's recent occupant and finds contraband on his person.** See United States v. Johnson, 383 F.3d 538, 545–46 (7th Cir.2004) ("**[A police officer's] discovery of a banned substance (drugs) on Johnson's person clearly provided him with probable cause to search the trunk of the vehicle** . . . since the officer had a reasonable basis for believing that more drugs or other illegal contraband may have been concealed inside." (footnote omitted)).
>
> Thus, having found drugs, as well as other items indicating involvement in the drug trade, on Brown's person, Nelson had probable cause to search the passenger compartment of the vehicle in which [the passenger] had just been sitting for additional contraband.

Id. at 319 (emphasis added).

This principle was reexamined by the Fourth Circuit in United States v. Brown, 677 F. App'x 827 (4th Cir. 2017), when the court found that a small amount of marijuana found on the driver's person was sufficient to support probable cause to search a vehicle.

**USA V. WIMER**                                                    2:19-CR-22

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 73], OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 80],
AND DENYING MOTIONS TO SUPPRESS [ECF NOS. 54, 63]**

Further, the Seventh Circuit held in United States v. Johnson, 383 F.3d 538 (7th Cir. 2004), that "discovery of a banned substance (drugs) on Johnson's person clearly provided . . . probable cause to search the trunk of the vehicle . . . since the officer had a reasonable basis for believing that more drugs or other illegal contraband may have been concealed inside."

Finally, the Supreme Court, in Wyoming v. Houghton, 526 U.S. 295 (1999), has found probable cause in a similar, albeit not identical, factual scenario. In Houghton, the Court found that probable cause to search a vehicle existed when police officers saw a hypodermic syringe in the driver's pocket.[5] Id. at 307. Officers asked the driver to step out, and they asked him why he had a syringe. Id. at 298. He responded that he used it to take drugs. Id. Even though, unlike in Houghton, Wimer was outside of the vehicle when police found contraband on his person, he had just been in the car a few minutes prior. If the facts in Houghton supported probable cause to search a vehicle under the totality of the circumstances, then they should here as well.

Based on these facts and governing case law, and under the totality of the circumstances, probable cause existed to search

---

[5] The Court even noted that the existence of probable cause was "uncontested" and that the issue before it was the scope of the probable cause.

USA V. WIMER                                                  2:19-CR-22

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 73], OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 80],
AND DENYING MOTIONS TO SUPPRESS [ECF NOS. 54, 63]**

the entire Volvo for drugs. Under the automobile exception, officers did not need to obtain a warrant before doing so, and the constitutional scope of their search was the same as it would have been had they obtained a warrant. After police officers discovered the drug paraphernalia found in Wimer's pocket, along with the drugs in the Crown Royal bag that had presumably been tossed from inside the Volvo,[6] it was fairly probable that contraband would be in the car. As such, any evidence found in the Volvo based on this search will not be suppressed.

Finally, Wimer argues in his Reply that the Government is no longer relying on the warrant to uphold the validity of the search. The Court presumes this is based on the Government's statement at the end of the suppression hearing:

> AUSA:
>
> "[I]t is our position, consistent with my response that I filed, . . . that the Crown Royal bag, the meth and Suboxone in it, and the tooter in his pocket, was enough for probable cause to search the whole car. And we are not relying on the—"
>
> Magistrate Judge:
>
> "Search warrant. Okay. Thank you."

---

[6] As discussed at the hearing before the Magistrate Judge, the Crown Royal bag was dry, while the ground and surrounding area were quite wet from recent snow - all facts which led officers to believe that the bag in question had been in the Volvo until Wimer attempted to toss it under the car.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [ECF NO. 73], OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 80], AND DENYING MOTIONS TO SUPPRESS [ECF NOS. 54, 63]**

The Court agrees with the Government on this issue. Therefore, it will not discuss the validity of the search pursuant to the warrant. Probable cause existed to search the entire vehicle without a warrant. Therefore, evidence found as a result of searching the Volvo will not be suppressed.

### III. CONCLUSION

For the reasons discussed above, the Court **ADOPTS** the R&R [ECF No. 73], overrules Wimer's objections [ECF No. 80], and **DENIES** both motions to suppress [ECF Nos. 54, 63].

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: November 13, 2019

*/s/ Tom S. Kleeh*

THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE